WILLIAM DOWLAN and others *vs.* COUNTY OF SIBLEY.

February 16, 1887.

**Constitution—Assessments by Counties for Local Improvements.—** The constitutional amendment empowering the legislature to authorize "municipal corporations" to levy assessments for local improvements, without regard to a cash valuation of the property assessed, *held* to authorize such legislation in respect to *counties.*

**Draining Wet Lands—Statutes held not Repugnant.—**The statute making it a criminal offence for any person to drain a meandered body of water is not applicable to limit the effect of a later statute authorizing the draining of wet and overflowed lands, through legal proceedings therein prescribed.

**Same—Assessment of Benefits—Description of Land in Judgment on Appeal.—**A judgment of the district court upon appeal, affirming the order of commissioners in such proceedings, is not defective because the lands affected are not described therein; the same being sufficiently described in other parts of the record.

Appeal by William Dowlan and others from a judgment of the district court for Sibley county, to which they had appealed from the determination of the county commissioners in proceedings for the establishment of a public ditch, and where the appeal was tried by *Macdonald,* J., and a jury.

*O'Brien & O'Brien,* for appellants.

*Sylvester Kipp,* for respondent.

DICKINSON, J.   Pursuant to the provisions of Laws 1883, *c.* 108, a public ditch or drain was established and constructed by the board of county commissioners of Sibley county, for the drainage of wet and overflowed lands in that county, including a "meandered" body of water known as Fahey's Lake.   An appeal was taken to the district court, where, upon trial of the cause, the facts were established which bring the case within the terms of the statute.   These appellants, whose lands have been charged with assessments for the cost of the work upon the basis of special benefits, in accordance with the provisions of the statute above referred to, question the consti-

tutionality of the law authorizing such assessments. It is claimed to be in contravention of section 1, article 9, of the constitution as construed in *Stinson* v. *Smith*, 8 Minn. 326, (366,) providing that "all property on which taxes are to be levied shall have a cash valuation."

Assessments made upon a basis of special benefits accruing to property from public works, which have come to be known as local improvements, have been generally considered as not being within the scope of constitutional provisions requiring taxation to be made upon a cash valuation of the property taxed. Cooley, Const. Lim. 617, 619, (*497,) and cases cited. It was, however, otherwise decided in this state in *Stinson* v. *Smith*. Subsequent to that decision this section of the constitution was amended by adding the proviso "that the legislature may, by general law or special act, authorize municipal corporations to levy assessments for local improvements upon the property fronting upon such improvements, or upon the property to be benefited by such improvements, or both, without regard to a cash valuation, and in such manner as the legislature may prescribe."

The question now presented is whether the words "municipal corporations," as here employed, should be deemed to include counties. At the time of the adoption of this amendment, counties might with propriety be termed political corporations. The statute declared them to be such. Gen. St. 1866, c. 8, § 75. They were not, however, in the proper and more general use of the term, *municipal* corporations. Yet, for the purposes of general designation, it is not uncommon to use that term in a sense including such *quasi* corporations as counties and towns, and so sometimes to distinguish public or political corporations or functions from those which would be termed private. Thus in our own decisions may be found such language as this: "A municipal corporation,—a city, county, or town," (*Harrington* v. *Town of Plainview*, 27 Minn. 224, 229; 6 N. W. Rep. 777;) "a county or any other municipal corporation," (*County of Blue Earth* v. *St. Paul & Sioux City R. Co.*, 28 Minn. 503, 507; 11 N. W. Rep. 73.) See, also, *Winspear* v. *District Tp. of Holman*, 37 Iowa, 542; *Ex parte Selma & Gulf R. Co.*, 45 Ala. 696–732.

In considering a provision in the constitution of Missouri forbid-

ding the creation of corporations by special acts, "except for municipal purposes," it was said that a corporation for municipal purposes is either a municipality, such as a city or town created expressly for local self-government, with delegated legislative powers, or it might be a subdivision of the state for governmental purposes, such as a county. *State* v. *Leffingwell,* 54 Mo. 458, 475.

A late amendment to our constitution prohibits the enactment of special or private laws "granting to any individual, association, or corporation, except municipal, any special or exclusive privilege, immunity, or franchise whatever." We feel no doubt that here the exception of "municipal" corporations has a meaning broad enough to include counties and towns; and it seems probable that under such a provision the legislature might enact a law authorizing a designated county to construct a bridge, and to receive tolls for its use, or to issue bonds for a proper public purpose. The word "municipal" seems to have been used in the sense of political or public. The use of the same words in the provision above referred to, and in the proviso here under consideration, affords a reason for ascribing the same meaning to them in both places. Nor is there any controlling reason for supposing that these words were used in different senses in the same instrument. Nor, again, is it apparent why the power of the legislature in the particular here involved should be unrestricted as respects incorporated municipalities, and wholly denied as to counties and towns. Our consideration of this question has led us to the conclusion that the words "municipal corporations" in the proviso under consideration may be reasonably construed as having the broad rather than the restricted sense, and as including such *quasi* corporations as counties and towns. We are not, therefore, at liberty to declare the legislation in question to be unconstitutional.

The draining of a meandered body of water in accordance with the provisions of the statute above referred to is not to be deemed unauthorized by reason of the fact that, by Gen. St. 1878, c. 95, §§ 75, 76, it was made a criminal offence for any person or persons to drain such a body of water. That criminal statute is not applicable to persons acting under the express authority of a law subsequently enacted, and for the accomplishment of public purposes.

It is said that the judgment of the district court affirming the order and determination of the board of county commissioners is erroneous, because this judgment does not describe the lands over which the drain is laid. It was sufficient that the order thus affirmed, and which was a part of the record in the district court, properly described the ditch and the lands affected, and it is not claimed that such was not the case. *Minnesota Central Ry. Co.* v. *McNamara*, 13 Minn. 468, (508,) 479, (516.)

Judgment affirmed.