## HENRY W. BENTON v. COUNTY OF HENNEPIN and Others.[1]

May 1, 1914.

Nos. 18,694—(42).

**Appeal from order overruling demurrer.**

    1. R. L. 1905, § 4365, as amended by Laws 1913, c. 474, does not contemplate certification of questions to this court, but merely saves the right of appeal from an order overruling a demurrer upon the conditions prescribed thereby, the case being reviewable here the same as prior to the amendment.

[1] Reported in 146 N. W. 1110.

State rural highway — payment by county.

 2. Under Laws 1911, c. 254, a board of county commissioners can neither omit assessments of benefits upon property subject thereto under the act, and obligate the county to pay one-half of the cost of the road, nor pay, in whole or in part, such assessments when made.

Same — order of county board.

 3. An order of a board of county commissioners establishing a state rural highway under this law is not affected by the amount to the county's credit in the state road and bridge fund for the current year.

Action in the district court for Hennepin county by a taxpayer of that county to restrain defendant county and the members of the board of commissioners of that county and the county auditor from proceeding under a certain petition for a state rural highway, or from paying out any funds of the county for work or materials for the construction and improvement of a certain state rural highway to be known as Rockford Road, No. 33, under a certain resolution of the board of county commissioners, unless defendants shall, as a part of the proceedings, appoint viewers as required by law to assess one-fourth of the cost of such construction upon the lands specially benefited thereby. From an order overruling defendants' demurrer to the amended supplemental complaint, Jelley, J., they appealed. Affirmed.

 *James Robertson,* County Attorney, *Richard S. Wiggin,* Assistant County Attorney, and *C. J. Rockwood,* for appellants.

 *Paul J. Thompson* and *Benton & Morley,* for respondent.

PHILIP E. BROWN, J.

In September, 1913, the board of county commissioners of Hennepin county, upon the first hearing of a petition under Laws 1911, p. 352, c. 254, known as the Elwell Law, for the establishment of a state rural highway, resolved that such highway would be a public benefit, ordered its establishment, construction and improvement, the cost to be shared equally by the state and county, without assessment upon lands abutting thereon or specially benefited thereby, and appointed an engineer to make survey of the line and furnish computations and specifications upon construction. This, a taxpayer's action, was commenced to enjoin defendants from taking further proceed-

ings until the appointment of viewers to assess one-fourth of the cost of construction upon lands specially benefited. The complaint appropriately alleged all facts recited, and in addition that the cost of the improvement would exceed $100,000, that there were lands, exceeding 10,000 acres, abutting thereon and adjacent thereto which would be specially benefited thereby in excess of $25,000, and that the allotment to the county from the state road and bridge fund for 1913 was $10,000, of which more than $8,000 had already been expended. The court overruled defendants' general demurrer and, acting under R. L. 1905, § 4365, as amended by Laws 1913, p. 699, c. 474, certified certain specific questions as presented thereby and as being, in its opinion, important and doubtful. Defendants appealed.

1. With reference to the procedure followed by the lower court in authorizing this appeal under Laws 1913, above cited, we feel called upon to say that this statute does not contemplate certification of questions to this court, but merely saves the right of appeal from an order overruling a demurrer upon conditions prescribed thereby, the case being reviewable here the same as prior to the amendment.

2. In Murray v. Smith, 117 Minn. 490, 136 N. W. 5, 40 L.R.A. (N.S.) 173, Ann. Cas. 1913D, 548, the Elwell Law was sustained as against certain constitutional objections; but the questions here involved were not considered. Therein, at page 491, Mr. Justice Bunn summarized the provisions and effect of sections one and two of the act as follows:

"Section 1 of chapter 254 provides for the construction or improvement of highways by county boards, to be known as 'state rural highways,' upon the approval of a petition for the same by the county board and the state highway commission, and that 'the expense therefor shall be borne one-fourth by local assessment, one-fourth by the county, and one-half by the state.' Section 2 provides that such highways shall be constructed or improved by a procedure identical with the proceeding prescribed by sections 3 to 52, inclusive, of chapter 230, [pp. 305–337] Laws 1905,[1] the drainage law, so far as the same may be made applicable to the construction or improvement of highways, to the raising of money therefor, and to the assessment

[1] [R. L. Supp. 1909, §§ 2651–45 to 2651–95.]

of benefits, one-fourth only of the cost of 'state rural highways' to be met by assessment. These sections of the drainage law, in so far as applicable, are made a part of this act. By turning to these provisions in chapter 230, Laws 1905, we find that the county board can act only upon a petition signed by six or more of the landowners whose land is liable to be assessed for the highway, setting forth the necessity thereof and that it will be of public benefit or promote the public health. The county board must approve the petition, as must the state highway commission. The assessment district is not limited, but the viewers determine the amount of benefits to the lands, to the aggregate of not more than one-fourth of the cost of the highway. Their report is made to the board, and after notice and hearing it rests with the board to determine whether the benefits have been duly assessed, and to confirm the report and to establish the highway. The assessments are payable in ten annual equal instalments, with six per cent interest."

Section 3 of the act, among other things, reiterates the provisions of section 1 with regard to the bearing of the expense, as follows:

"One-fourth only of the cost of 'state rural highways' shall be met by the assessment of lands or property therefor including that of corporations, municipal or private."

Except as we have stated above, the board made no attempt to comply with the provisions of Laws 1905, c. 230, pp. 305–329, §§ 3–52, inclusive, as provided by section 2 of the Elwell Law. Was its omission in this regard, especially failure to follow the procedure prescribed by section 10 of the drainage law, before entering an order for the establishment of the road, fatal? Authority to construct state rural highways is purely statutory, and unless some provision of the act not before mentioned can be invoked as warranting the board in proceeding without substantial compliance with the statutory prerequisites indicated, the order cannot be sustained. Defendants concede this, but claim to find such warrant in the provisions of section 7, which reads as follows:

"The state, in addition to the amount hereinbefore provided to be paid by it, or any county, town, or municipal corporation in which said road is in whole, or in part, located, or any interested person,

may contribute to the establishment, construction or improvement of such road, and may do so by bearing a part of the burden thereof that would otherwise be laid upon any county, or town, or person. The amount of such contribution shall be deducted at the time it is given from the obligation of the county, town or person aided."

Defendants' argument is, in effect, that this action delegates to the county board discretion to make or omit special assessments at pleasure, and likewise to obligate the county to pay one-half of the expense, the choice of the latter alternative rendering unnecessary the steps omitted ·in the proceedings under consideration. We hold against this contention. The previous sections of the law provide clearly and definitely that one-fourth of the expense shall be raised by local assessment, and as the contrary cannot fairly be inferred from the provisions of section 7, without unwarranted emasculation, or from any other provision of the act, the general provision as to apportionment of cost must prevail. Had the legislature intended to give the county board discretion to impose upon the county one-half · the expense, it might easily have so expressly provided; and by no rule of statutory construction with which we are familiar can the ambiguous expressions used in section 7 be allowed to override the plain directions of preceding sections. The act is liberal to adjacent landowners, enabling them to have the advantage of the improvement at comparatively small cost. If defendants' construction be adopted, the legislature must be held to have authorized the county board, merely upon approval of the petition by the state highway commission, whose interest is mainly that of the state at large, to construct roads at will, without reference to whether the benefits will exceed the cost thereof, and also to make unfair discrimination in constructing different roads under precisely the same circumstances, in one case imposing upon the owners of property benefited the burden of bearing their full quota of the cost, and in another relieving them from all expense save that involved in general taxation. Aside from constitutional considerations, therefore, the construction contended for is so manifestly inconsistent with the interpretation heretofore given analogous statutes relating to public improvements, that it should not be indulged unless imperatively necessary; nor should

we impute to the legislature such loose regard for the expenditure of public funds as would be suggested thereby.

The precise meaning of section 7 is difficult of determination; but while it is not involved on this appeal further than we have above indicated, and though it would seem to refer solely to additional aid from the state, we deem it advisable to say that, without reference to any question of legislative power, it can no more properly be construed as authorizing the county's payment, in whole or in part, of assessments made under the mandatory provisions of the preceding sections, than as warranting their omission in the first instance. Furthermore, this section, however construed, cannot affect the validity of other sections of the act.

2. The final question presented is whether the authority of the county board to order and undertake the construction of the road is affected by the fact that of the county's apportioned allotment from the state road and bridge fund there remains in the state treasury less than $2,000. It is argued that since, under Const. art. 9, § 5, state appropriations in aid of highway construction can be made only from the state road and bridge fund (Cooke v. Iverson, 108 Minn. 388, 122 N. W. 251), and the proportion of such fund which any county may receive in a single year cannot be "more than three per cent    *    *    *    of the total fund thus provided and expended" for the year (Const. art. 9, § 16), and furthermore, since the allotment for the year 1913 was less than the board's order contemplated the state should pay, therefore the county assumed a primary liability (Laws 1911, p. 353, c. 254, § 4) [1] which, by reason of insufficiency of the state funds subject to pay its one-half, would result in the county's paying more than one-fourth of the cost, contrary to the statute.

But the express terms of section 3 of the Elwell Law furnish a complete answer to this contention; for, paralleling the provisions of the drainage act relating to issuance of bonds, it authorizes the highway commission to repay the county the state's share of the cost "in ten annual instalments, or that it may be paid as soon as available." The fact, therefore, that a county's annual allotment from the state road and bridge fund may fall short of the share of the cost to be

[1] [G. S. 1913, § 2606.]

borne by the state, is immaterial, unless there is some inhibition against such a carrying over of the county's charge upon the state fund as above indicated. Such cannot be found in Laws 1913, p. 328, c. 235,[1] for section 91 thereof expressly provides that the Elwell Law shall not be affected thereby; nor in Laws 1905, p. 201, c. 163, § 10, limiting the amount which may be paid to a county in any year for work done by it under direction of the state highway commission, for the subject-matter there dealt with is road work in general, and, in any event, the Elwell Law, being of later date, would prevail. The contingency, suggested in behalf of plaintiff, that the county's proportion of the state fund might never be sufficient to pay the state's contribution to the improvement, is too remote to merit consideration. The county, under Const. art. 9, § 16, is absolutely entitled to a yearly allotment of not less than one-half of one per cent of the state road fund, and may even receive three, nor will it be assumed that the state highway commission, after approving the project, will not do its part towards the cost by paying over to the county its fair and legal share, and if it should attempt to evade this duty the county would have ample remedy in the premises. It may also be suggested that the state is not likely to repudiate its solemn obligation under article 16 to provide and maintain the fund thereby provided for.

An order establishing a state rural highway and charging the state with one-half of the cost, amounts merely to an appropriation by the county board, under constitutional and statutory authority, of such amount out of the state fund as it may be, or from year to year may become, entitled to, for its own reimbursement to the amount of its primary liability therefor. This is clearly authorized by the act of 1911, and is contrary to neither constitutional limitation nor subsequent statute. See Fleckten v. Lamberton, 69 Minn. 187, 191, 72 N. W. 65. Otherwise the state, in order to give substantial aid to projects contemplated by the Elwell Law, would be bound to maintain a standing road and bridge fund of enormous, if not prohibitive, proportions.

We hold that an order establishing a state rural highway is not affected by the amount to the county's credit in the state road and bridge fund for the current year.

Order affirmed.

[1] [G. S. 1913, §§ 2488, et seq.]